{¶ 34} I respectfully dissent.
 {¶ 35} I agree with the separate concurrence that clock time will not necessarily resolve the question of what is immediate. But clock time is not the deciding factor here. As the Tenth Appellate District said, "Whether the action is immediate depends upon the circumstances of the case." State v. Thornton,
1977 Ohio App. Lexis 8779, at *3-4. The opinion in Thornton,
unanimously adopted by a panel consisting of Judges McCormack, Holmes, and Whiteside, provided an analysis which, I believe, applies to the facts here.
 {¶ 36} In Thornton, the appellate court cited to the following facts: "appellant was observed committing a theft offense in a mercantile establishment * * * and at about 5:40 p.m. was detained by a security officer employed by the establishment. The security officer showed appellant his badge and required appellant to accompany him to the security office. * * * At about 6:40 p.m. appellant produced a paint scraper and attempted to escape from the security office. At that time appellant had been under control of the security personnel for about one hour in stabilized detention. Appellant then threatened the use of force to obtain his freedom."
 {¶ 37} The court first observed, "The detention of appellant was in accordance with R.C. 2935.041 which permits a merchant or his employee to detain a person in order to recover the item without search or undue restraint or to cause an arrest to be made by a police officer when there is probable cause for believing that items offered for sale by the establishment have been unlawfully taken." After "considering the facts" in that case, the appellate court concluded: "it is apparent that appellant did not flee immediately after attempting or committing the theft offense in order to prevent his apprehension for the crime as contemplated by R.C. 2911.02, but instead attempted to escape from detention after his detention had been stabilized for some time." Reversing the trial court, the appellate court concluded that "an essential element of the crime of robbery was not established." Further, the court clarified that the proper charge * * * was the charge of "escape," a felony of a lesser degree than robbery. Today, if the escape were applied to a charge of theft, which is a misdemeanor, the escape would be classified as a felony of the fifth degree. R.C.2921.34(C)(2)(c)(i).
 {¶ 38} I am aware that the detention in Thornton was an hour, whereas here, according to the manager, it could have taken 15 minutes. However, it is what happened during this time that establishes detention, not clock time. In the case at bar, when defendant was stopped,[1] he voluntarily accompanied the clerk to a small office, where he surrendered the stolen goods. The manager left to get his camera. In the interim, the clerk called to determine the price of the goods and tallied up the total. The clerk then filled out a criminal trespassing form. In an attempt to stall the defendant, the clerk said, he took his time writing and asked the defendant to repeat certain information four or five times. During this period, defendant was calm and never physically threatened anyone or used force. These circumstances indicate a "stabilized detention."
 {¶ 39} It was not until he learned the police had been called that he attempted to escape. And in this attempt, he tried to "scoot" past a big clerk, weighing between 240 and 260 pounds, who actively played football as a defensive end. The clerk, who had been standing on one leg while he was writing up the report on his knee, lost his balance and hit his head.[2] Then the door closed, locking them in the room, and a tussle followed.[3]
 {¶ 40} Because the facts in Thornton are quite similar to the facts in the case at bar, I believe we should adopt the analysis the court applied to those facts. Here also, the defendant had surrendered the stolen goods and submitted to authority. In other words, it was detention as defined in R.C.2911.02 that he attempted to escape from. There was no single continuous transaction. His attempt to scoot past the store employee occurred after his detention, which, to use the language of Judge McCormack in Thornton, had "stabilized."
 {¶ 41} The facts here and in Thornton are different from those in State v. Frunza, ante, in which there was no voluntary surrendering of goods and no submission to authority. I disagree with the separate concurrence because it does not appreciate the difference between being stopped and being detained and the significance of a stabilizing detention. In Frunza, trying to push a stroller toward the doorway, a defendant twice pushed the stroller's safety bar into the leg of an assistant manager. Unable to exit with the stroller, which contained stolen merchandise, defendant picked up the child and pushed the employee from the front while defendant's companion pulled the employee's hair from behind. Without any voluntary surrender of stolen goods or submission to authority, she and the stroller were taken to the manager's office, where the store recovered the merchandise from the stroller and, upon being advised the police were coming, defendant became angry and struck the store manager. The opinion reports these events as one continuous action. There was no lapse of time while a clerk filled out a form and called to determine the price of the goods. In other words, there was no stabilizing period of time that might amount to an intervening event.
 {¶ 42} The majority relies upon the case of State v.Hughes, ante, in which a fight ensued after an employee in the parking lot grabbed the defendant as he was running away with the merchandise. In Hughes, the flight immediately followed the theft. There was no detention, much less a period of stabilized detention as occurred in both Thornton and McDonald, as well as the case at bar. In Hughes, on the other hand, defendant was in flight with the goods when he was first apprehended and used force. When a defendant flees with the stolen goods, it is clearer that the flight is one continuous action with the theft. That is the situation in State v. Costa, 1998 Ohio App. Lexis 6380 at *7, but not here.
 {¶ 43} Even if the stolen goods are yielded, moreover, to arrive at a period of stabilized detention there must be some submission to authority. That did not occur in State v. Wright,
1989 Ohio App. Lexis 738, in which defendant, when confronted, handed the manager a bottle of wine, but, when the manager took a hold of his bicycle and asked defendant to step back inside the store, defendant engaged in a struggle and struck the clerk several times. Nor was there any period of submission to authority in State v. Dixon, 1990 Ohio App. Lexis 2663.[4]
 {¶ 44} In State v. McDonald, ante, this court was presented with a set of facts also almost identical to those in the case at bar. However, the issue in that case was whether the court should have given an instruction on a lesser included crime. This court declined at that time to choose between the crimes of robbery and theft, but it found that there should have been an instruction on the lesser included offense of theft because the evidence could "have indicated there was a break in the sequence of events comprising the elements of robbery that disengaged the theft from" an assault of a police officer. Thus this court reversed and remanded the case. That option is not available here. The issue is only sufficiency of the evidence. Moreover, I find more compelling the Tenth District's conclusion that the proper charge was the crime of escape from detention. The court did not consider that issue in McDonald, nor do we know whether the trial court considered it here.
 {¶ 45} As in the case of Thornton, "[t]he point in dispute is whether the threatened force took place `in fleeing immediately after committing the theft offense.'" Answering that question, the eminent jurists in Thornton explained that the attempted flight followed a detention, not the theft. In the analysis of the circumstances that demonstrate detention, theThornton court did not defer to the lower court, as the concurring opinion seems to here. The Thornton court found an essential element of robbery was not established by the evidence.
 {¶ 46} The concurring opinion emphasizes the role of the trial court in determining whether there was a detention. But a reviewing court does not defer to the trial bench on matters of sufficiency. Under the sufficiency standard, a reviewing court views the evidence in a light most favorable to the prosecution, but does not defer to the trial court's judgment. The issue here is not one of conflicting evidence, but of the analysis of that evidence. The concurring opinion says it is following the analysis in McDonald rather than in Thornton. These cases, however, are not in conflict. In McDonald, this court advised that the facts indicated the theft might be viewed as "disengaged" from the assault. Deciding to remand the case on another issue, the McDonald court declined to rule on the disengagement, but clearly advised the trial court of that option. We cannot decline to rule here. The pivotal issue is the nature of the defendant's detention.
 {¶ 47} Neither the lead opinion nor the concurring opinion explains why the circumstances here do not demonstrate a detention constituting an intervening break. More importantly, we do not know whether the trial court ever considered the issue of detention in this case. If only for that reason, this court should resolve this question.
 {¶ 48} Finally, the concurring opinion notes the legislature has failed to define a low level felony that would "encompass theft offenses involving force * * * less drastic than traditional armed or violent robbery scenarios." This comment, cited as a basis for affirming the lower court, confuses the issue. It is not a matter of how much force is used. Rather, the question is whether there is a connection between the theft and the force. That the legislature has not described a lesser crime based on the degree of force used does not help in understanding what constitutes a detention sufficient to create a break in the sequence of events. I would agree, however, that the legislature should be encouraged to consider such a classification, especially for the mildly desperate acts of a person who uses only the force of his shoulder to push past someone blocking a door.
 {¶ 49} It is not necessary, however, to determine the degree of force here, because the defendant was not properly charged. The circumstances of this case demonstrate a stabilized detention occurred and, therefore, the proper charge was escape from detention. Therefore, a necessary element in robbery has not been established.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The clerk said he was at the door waiting for defendant and actually stopped defendant at the lottery line. The manager agreed the lottery machine was inside the store but stated defendant was stopped in the mall.
[2] The clerk's injury amounted to only a headache, which he described as "nothing."
[3] The nature of this "tussle" is not clear from the record. The clerk said defendant tried to push past him. Then the clerk "got tired, and grabbed him, and turned him completely into the room." In that tussle, the clerk said he received some scratches.
[4] In closing argument, the state cited the cases of Costa,Wright, and Dixon in support of its charge of robbery.